EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
JULIE L. GARLAND
Senior Assistant Attorney General
ANYA M. BINSACCA
Supervising Deputy Attorney General
ELIZABETH S. KIM, State Bar No. 166599
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 703-5715
 Fax: (415) 703-5843
 Email: Elizabeth.Kim@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNTH E. LUTHER,<br><br>                    Petitioner,<br><br>        v.<br><br>BEN CURRY, WARDEN,<br><br>                    Respondent. | C 07-2565 JSW |

ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS;
MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

| | Page |
|---|---|
| ANSWER | 1-6 |
| MEMORANDUM OF POINTS AND AUTHORITIES | 6 |
| ARGUMENT  THE HABEAS PETITION MUST BE DENIED BECAUSE THE STATE COURT DECISION WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS. | 6 |
| A. Standard of Review. | 6 |
| B. The State Court's Adjudication of Petitioner's Federal Claims Should Be Affirmed Under § 2254(d) Because the State Court Decision Did Not Contradict, Unreasonably Apply, or Unreasonably Determine the Facts Under the Only Clearly Established Federal Law Addressing Protections Due to Inmates in the Parole Process. | 7 |
| C. Even if the Some-Evidence Standard Applies, Petitioner's Habeas Petition Must Be Denied Because There Is Some Evidence to Support the Parole Denial as Found by the State Court. | 9 |
| CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Baja v. Ducharme*
187 F.3d 1075 (9th Cir. 1999) .......................................................................................... 6

*Cal. Dept. of Corr. v. Morales*
514 U.S. 499 (1995) ...................................................................................................... 10

*Carey v. Musladin*
_U.S._, 127 S. Ct. 649 (2006) ......................................................................................... 8

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*
442 U.S. 1 (1979) ........................................................................................................ 5-9

*In re Cantrell*
329 F.3d 1119 (9th Cir. 2003) ....................................................................................... 11

*In re Dannenberg*
34 Cal. 4th 1061 (2005) ................................................................................................ 10

*Lockyer v. Andrade*
538 U.S. 63 (2003) ................................................................................................... 6, 11

*McQuillion v. Duncan*
306 F.3d 895 (9th Cir. 2002) .......................................................................................... 8

*Milton v. Wainwright*
407 U.S. 371 (1972) ........................................................................................................ 6

*Powell v. Gomez*
33 F.3d 39 (9th Cir. 1994) .............................................................................................. 9

*Price v. Vincent*
538 U.S. 634 (2003.) ................................................................................................... 6, 7

*Sandin v. Conner*
515 U.S. 472 (1995) ....................................................................................................... 5

*Sass v. California Board of Prison Terms*
461 F.3d 1123 (9th Cir. 2006) ..................................................................................... 5, 8

*Schriro v. Landrigan*
_U.S._, 127 S. Ct. 1933 (2007) ....................................................................................... 8

*Superintendent v. Hill*
472 U.S. 445 (1985) ............................................................................................. 8, 9, 11

*Wilkinson v. Austin*
545 U.S. 2384 (2005) ..................................................................................................... 7

## TABLE OF AUTHORITIES (continued)

1

2  *Wolff v. McDonnell*
   418 U.S. 539 (1974) ........................................................................................... 8

3

4  *Woodford v. Viscotti*
   537 U.S. 19 (2002) ............................................................................................ 7

5  *Ylst v. Nunnemaker*
   501 U.S. 797 (1991) .......................................................................................... 7

6

7  **Statutes**

8

   Antiterrorism and Effective Death Penalty Act ............................................. 5, 7

9

   California Code of Regulations, Title 15
10        § 2402(b) ................................................................................................ 11
          § 2402(c)(3) ........................................................................................... 10
11        § 2402(c)(D) ........................................................................................... 9

12 California Penal Code
          § 3041 .................................................................................................... 11
13        § 3041.5 ................................................................................................. 10
          § 3041.5(b)(2)(A) ............................................................................... 5, 10
14
   United States Code, Title 28
15        § 2254 ...................................................................................................... 5
          § 2254(d) ..................................................................................... 6, 7, 9, 11
16

17

18

19

20

21

22

23

24

25

26

27

28

Page

8

7

7

5, 7

11
10
9

11
10
5, 10

5
6, 7, 9, 11

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
JULIE L. GARLAND
Senior Assistant Attorney General
ANYA M. BINSACCA
Supervising Deputy Attorney General
ELIZABETH S. KIM, State Bar No. 166599
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5715
 Fax:  (415) 703-5843
 Email:  Elizabeth.Kim@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH E. LUTHER,<br><br>  Petitioner,<br><br>v.<br><br>BEN CURRY, WARDEN,<br><br>  Respondent. | C 07-2565 JSW<br><br>**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:   The Honorable<br>         Jeffrey S. White |

    This Court issued an Order to Show Cause directing the Respondent to file a response to the Petition for Writ of Habeas Corpus filed by California state inmate Kenneth Luther.  In the Order to Show Cause, this Court dismissed Petitioner's claims 11-13 for failing to state a federal claim for relief.  Therefore, Respondent's answer and the supporting memorandum of points and authorities are limited to Petitioner's ten claims of due process violations.

    As an answer to the habeas corpus petition, Respondent Ben Curry, Acting Warden of Correctional Training Facility, alleges, denies, and affirmatively alleges:

    1.   Petitioner Luther is lawfully in the custody of the California Department of Corrections and Rehabilitation following his convictions for second-degree murder and receipt of stolen

1  property. (Ex. 1 - Abstract of J.) In 1987, Petitioner was sentenced to serve a fifteen-year-to-life

2  term plus two years for the murder while being armed with a deadly weapon, and an additional

3  two-year term was imposed for receiving stolen property. (*Id.*; Ex. 2 -5/23/05 Tr. of Hr'g, at 1.)

4      2.   In the current proceeding, Petitioner does not challenge his conviction or sentence, but

5  rather the Board of Parole Hearings' May 2005 decision denying him parole.

6      3.   On May 23, 2005, Petitioner appeared before the Board for his subsequent parole

7  consideration hearing. (Ex. 2.) At the conclusion of the hearing, and after deliberation, the

8  Board panel concluded that Petitioner was not yet suitable for parole and would pose an

9  unreasonable risk of danger to society or a threat to public safety if released from prison and

10 denied him parole consideration for two years. (*Id.* at 71, 73.) The Board's decision was based

11 on the circumstances of Petitioner's commitment offense, including the trivial motive for the

12 murder; his past criminal record and failure to profit from society's previous attempts to correct

13 his criminality; his unstable social history, insufficient participation in self-help programs, and

14 in-prison disciplinary history; and the opposition to parole from the District Attorney's Office.

15 (*Id.* at 71-75.) Although commending Petitioner for his positive achievements in prison, the

16 Board determined that "currently the positive aspects of behavior do not yet outweigh the factors

17 of unsuitability." (*Id.* at 73.) In a separate decision, the Board explained its basis for a two-year

18 denial of parole consideration. (*Id.* at 73-74.)

19     4.   At the hearing, the Board considered the circumstances of Petitioner's commitment

20 offense: (*See* Ex. 2 at 12-14; *see also* Ex. 3 - 2/2005 Life Prisoner Eval. Report, and Ex. 4 -

21 Probation Officer's Report, at 2-4.)

22     On May 10, 1086, at around 1:40 a.m., Petitioner attempted to steal a car stereo from a Jeep

23 belonging to Stacey Hine that was parked in front of her parents' house. During the attempted

24 theft, Petitioner was seen by Stacey's boyfriend, victim Joseph Vomvolakis, who happened to be

25 leaving Stacey's parents' house at the time. (Ex. 2 at 12-14; Ex. 4 at 2-4.)

26     Stacey testified to hearing three gunshots shortly after Joseph left the house. While she

27 called the Sheriff's Office, she asked her brother to check outside. Simultaneously, the Sheriff's

28 Office reported a man down, who was later identified as Joseph Vomvolakis. Joseph suffered

Answer; Mem. of P&A                                                    *Luther v. Curry*
                                                                                    C 07-2565 JSW

two gunshot wounds from a .25 caliber automatic weapon: one to the abdomen and the other to his head. (Ex. 2 at 12-14.) "The wound to the stomach severed the iliac artery and would, of itself, have eventually caused death." (Ex. 4 at 3.) "The wound to the head, entering from behind the ear and ending on the right side of the head, would, of itself have caused death." (*Id.*)

The sheriff's deputies canvassed the area and went to a nearby motel where they interviewed Petitioner. (Ex. 2 at 13.) Petitioner told the deputies that he had been asleep since returning back home from a night of drinking. (Ex. 4 at 3.) Later, fingerprints from a beer can and a knife found near the Jeep were matched to Petitioner, and he was arrested. (Ex. 2 at 14; Ex. 4 at 3.) During a search of Petitioner's apartment, the deputies found marijuana and various pieces of car stereo equipment, one of which was reported stolen from a local residence. (Ex. 4 at 4.) While at the apartment, the deputies also received telephone calls requesting marijuana purchase and several people arrived at the apartment with the same request. (Ex. 4 at 4.)

When questioned by the deputies, Petitioner stated that he had been in the process of taking the stereo equipment from the Jeep when someone came out of the house. (Ex. 4 at 4.) Petitioner took off running, but was chased by the victim, and was tackled and knocked to the ground. (*Id.*) While the two struggled, the gun Petitioner had taken out went off. (*Id.*) Petitioner then ran from the scene after throwing the gun and a screw driver into a nearby field. (*Id.*) Petitioner admitted to the sheriff's deputies that he had stolen the gun from a man he befriended. (*Id.*)

5. After being sworn to tell the truth, Petitioner testified that the circumstances of the murder as described in the 2005 Life Prisoner Evaluation Report was accurate. (Ex. 2 at 14.) He also testified that he was stealing car stereos to support his drug habit (*id.* at 15); there was no confrontation with the victim (*id.* at 16); he did not know he had shot the victim when he fired the gun because he was shooting "at a dirt bank;" he fired the gun to stop the victim from chasing him (*id.* at 16-17, 43); and that he fired his gun as he was falling to the ground from either having tripped or because the victim ran into him (*id.* at 17, 48). Petitioner testified that he could not tell the Board how things happened because it happened too quickly, but the victim kept chasing him, so he pulled out his gun to scare him away and fired. (*Id.* at 16-17, 41-49.) Petitioner was

Answer; Mem. of P&A

*Luther v. Curry*
C 07-2565 JSW

3

1 | using cocaine multiple times a day, and also using marijuana and alcohol at the time of the
2 | offense. (*Id.* at 21.)

3 |     6. Medical and forensic investigations after the murder revealed that there was no struggle between Petitioner and the victim, and the victim was shot from a distance due to lack of power residue around the gunshot wounds. (Ex. 4 at 6.)

    7. In addition to the commitment offense, the Board discussed with Petitioner his social history, including his family life, marriage, educational and employment background, and substance abuse history (primarily cocaine, marijuana, alcohol); his juvenile and adult criminal records; his involvement in Teen-Anon for alcohol use as a juvenile; his parole plans and support letters; his counselor's reports; his activities and achievements in prison, including completing a vocational program in computer refurbishing, participation in the AA program, educational achievements, and laudatory memoranda for excellent work performance; his four serious misconduct reports and eight counseling memoranda in prison; his consumption of pruno (inmate-manufactured alcohol) while in prison; and reports from prison psychologists. (Ex. 2 at 17-; *see also* Ex. 4 at 6-8, Ex. 5 - List of Disciplinary History, Ex. 6 - Nov. 2001 Mental Health Eval. Report; Ex. 7 - Dec. 2001 Life Prisoner Eval. Report; Ex. 8 - Nov. 1997 Life Prisoner Eval. Report.) Thus, the Board gave Petitioner individualized consideration of all relevant suitability and unsuitability factors at the May 2005 hearing.

    8. Petitioner's juvenile offenses include theft and receipt of stolen property, and one offense of throwing a substance at a vehicle that was dismissed. (Ex. 2 at 23, Ex. 4.) As an adult, Petitioner was convicted in 1983 for possession of several pounds of marijuana and cash in his car with the resulting thirty-day jail term with thirty-six months probation. (*Id.*) In 1985, Petitioner was convicted of fighting in a public place. (*Id.*)

    9. The District Attorney's Office opposed parole for Petitioner. (Ex. 2 at 50-62.)

    10. After being denied parole, Petitioner filed a habeas corpus petition in the Santa Cruz County Superior Court challenging the Board's 2005 decision. The court denied his petition in a reasoned decision. (Ex. 9.) The superior court found that there was ample evidence, not just some evidence, for the Board's decision, and that the Board had the discretion to base its

Answer; Mem. of P&A

*Luther v. Curry*
C 07-2565 JSW

decision on the circumstances of the commitment offense alone. (*Id.*)

11. Petitioner also challenged the Board's decision in the California Court of Appeal and the California Supreme Court and his petitions there were summarily denied. (Ex.10- Ct. of Appeal Order; Ex. 11 - Cal. Sup. Ct. Order.)

12. Respondent admits that Petitioner exhausted his state remedies regarding the Board's 2005 decision. Respondent denies, however, that he has exhausted his claims to the extent they are more broadly interpreted to encompass any systemic issues beyond this parole review.

13. Respondent admits that Petitioner's habeas petition is timely and that his petition is not otherwise procedurally barred.

14. Respondent denies that the Board unconstitutionally issued a two-year denial of parole consideration. *See* Cal. Penal Code, § 3041.5(b)(2)(A).

15. Respondent denies that the Board is barred by the doctrine of collateral estoppel from using the circumstances of Petitioner's commitment offense and/or his trivial motive for the crime to deny him parole.

16. Respondent denies and reserves the argument that Petitioner is entitled to federal habeas relief under 28 U.S.C. § 2254 because California inmates do not have a federally protected liberty interest in parole release and the state court decisions are not contrary to clearly established federal law as determined by the United States Supreme Court. Although the Ninth Circuit has held that California inmates do have a liberty interest in parole, *Sass v. California Board of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), this circuit court decision is not clearly established federal law for purposes of the Antiterrorism and Effective Death Penalty Act (AEDPA). The Supreme Court has set forth two methodologies for determining whether a state creates a federally protected liberty interest and California inmates do not have a liberty interest in parole under either methodology. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979); *Sandin v. Conner*, 515 U.S. 472 (1995).

17. Even if Petitioner has a federal liberty interest in parole release, he received all the due process to which he is entitled under clearly established federal law because he received an opportunity to be heard by the Board and a statement of reasons for the Board's decision.

*Greenholtz*, 442 U.S. at 16. And even if he was entitled to more process than provided for under *Greenholtz*, the state courts properly found that the Board's decision to deny Petitioner's parole was supported by more than some evidence in the record. (Exs. 9-11.)

18. Respondent denies that Petitioner's federal due process rights were violated in connection with the Board's 2005 decision.

19. Respondent submits an evidentiary hearing is not necessary because the claims can be resolved on the existing state court record. *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999).

20. Petitioner fails to state or establish any grounds for habeas corpus relief.

For the reasons stated in this Answer and in the following Memorandum of Points and Authorities, the Court should deny the petition.

## MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT

**THE HABEAS PETITION MUST BE DENIED BECAUSE THE STATE COURT DECISION WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

**A. Standard of Review.**

The purpose of federal habeas corpus review is to supervise the quality of state courts' adjudications of federal constitutional claims. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). Thus, a habeas petitioner whose claim was adjudicated on the merits in state courts is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d): (1) the adjudication of the claim by the state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law; or (2) the adjudication of the claim by the state court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003.)

As explained by the Supreme Court, § 2254(d)(1) "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). The "highly

deferential standard for evaluating state court rulings" embodied in § 2254(d) "demands that state court decisions be given the benefit of the doubt." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). Thus, it is error for a federal court to review *de novo* a claim that was adjudicated on the merits in state court. *See Price*, 538 U.S. at 638-43.

Here, the state courts adjudicated Petitioner's federal constitutional claims on the merits when they upheld the Board's decision denying parole to Petitioner. (Ex. 9-11.) The Santa Cruz County Superior Court's decision, the last reasoned decision and thus the decision to which § 2254(d) applies, *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 805-06 (1991), found more than some evidence to support the Board's decision. (Ex. 9 at 2 ["There is ample evidence for the Board to do what it did."].) The superior court found that the Board could have, and that it had the discretion to, deny Petitioner parole based on the circumstances of his commitment offense alone. (*Id.*) But in this case, the Board denied Petitioner parole only in part based on the circumstances of his offense. (Ex. 2.) The state court's adjudication of Petitioner's federal claims is entitled to deference under AEDPA.

   B.   **The State Court's Adjudication of Petitioner's Federal Claims Should Be Affirmed Under § 2254(d) Because the State Court Decision Did Not Contradict, Unreasonably Apply, or Unreasonably Determine the Facts Under the Only Clearly Established Federal Law Addressing Protections Due to Inmates in the Parole Process.**

The only clearly established federal law concerning the due process protections required at a parole proceeding held that due process is satisfied if the inmate is given an opportunity to be heard and he receives a decision informing him of the reasons he did not qualify for parole. *Greenholtz*, 442 U.S. at 16. Thus, as a matter of "clearly established" federal law, a challenge to a parole decision will fail if the inmate has received the protections required under *Greenholtz*.[1]

The Ninth Circuit, however, has held that some evidence must support a parole decision.

---

1. The Supreme Court has cited *Greenholtz* approvingly for the proposition that the "level of process due for inmates being considered for release on parole includes opportunity to be heard and notice of any adverse decision" and noted that *Greenholtz* remained "instructive for [its] discussion of the appropriate level of procedural safeguards." *Wilkinson v. Austin*, 545 U.S. 209, 228-29 (2005).

*See Sass*, 461 F.3d 1123; *McQuillion v. Duncan,* 306 F.3d 895, 904 (9th Cir. 2002) (both holding that the some-evidence standard applies to parole decisions). These decisions are not clearly established federal law because, although the Supreme Court has applied the some evidence standard to a prison disciplinary hearing, it has never applied it in the context of parole release. *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (applying the some evidence standard to prison disciplinary proceedings).

Because the Supreme Court developed the some-evidence standard in the context of a prison disciplinary hearing, which is fundamentally different from a parole proceeding, application of this standard to a parole decision cannot be clearly established federal law. *Carey v. Musladin,* __U.S.__, 127 S. Ct. 649, 654 (2006); *Schriro v. Landrigan,* __U.S.__, 127 S. Ct. 1933, 1942 (2007). The level of due process protections to which an inmate is entitled is directly related to the level of his liberty interest and the nature of the decision being made. *Greenholtz*, 442 U.S. at 13-14. At a disciplinary hearing, the inquiry is retrospective and factual in nature, and the prisoner faces a potential loss of credits. *Id.* at 14. A decision to parole an inmate is fundamentally different. First, the level of liberty interest an inmate has in the possibility of parole is markedly different from that of an inmate who is facing a loss of credits. *Wolff v. McDonnell*, 418 U.S. 539, 560-61 (1974) (contrasting the different interests that a parolee and a prisoner may have in the deprivation of their liberty); *Greenholtz*, 442 U.S. at 13-14 (distinguishing the parole suitability decision from the parole revocation and prison disciplinary decisions). Second, a parole decision is not factual in nature. Rather, it is a predictive and subjective decision requiring discretionary analysis of the inmate's suitability for release. *Greenholtz*, 442 U.S. at 9-10. In fact, due to the discretionary nature of parole decisions, the Supreme Court held that, in contrast to prison disciplinary hearings, due process does not require the decision-maker to specify the evidence showing that a prisoner is unsuitable for parole. *Id.* at 15. Thus, the only clearly established Supreme Court authority describing the process due when there is a federal liberty interest in parole simply requires that the inmate be given an opportunity to be heard and be advised of the reasons he was not found suitable for parole. *Id.* at 16.

Here, Petitioner does not contend that he failed to receive the protections outlined in

1  *Greenholtz*. (*See generally* Pet.) Because he received all the process due under the only United States Supreme Court law finding a federal liberty interest in discretionary parole release, the state court decision upholding the parole denial was not contrary to or an unreasonably application of any United States Supreme Court law. *See* 28 U.S.C. § 2254(d).

**C.  Even if the Some-Evidence Standard Applies, Petitioner's Habeas Petition Must Be Denied Because There Is Some Evidence to Support the Parole Denial as Found by the State Court.**

If the requirement of "some evidence" to support a Board's parole decision were clearly established federal law and thus applicable to this case, "the 'some evidence' standard is minimally stringent, such that a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the [parole authority]." *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citations and internal quotations omitted); *see also Hill*, 472 U.S. at 456 (stating that the "Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact"). Determining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. *Hill*, 472 U.S. at 455. Indeed, in examining the record, a court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence. *Id.* The question is whether there is *any* reliable evidence in the record that could support the decision reached. *Id.*

Here, the state courts determined that the Board's decision is supported by more than some evidence; that there was ample evidence in the record to support the Board's decision. (Ex. 9-11.) In light of this finding by the state courts, Petitioner cannot show that the state court decisions were contrary to or involved an unreasonable application of clearly established federal law. He also cannot show that the state court decisions were based on an unreasonable determination of the facts because the circumstances of his offense were especially heinous, atrocious, and/or cruel when he fatally shot an unarmed victim in the course of, and while escaping from, his attempted theft of a car stereo component. Petitioner's behavior demonstrated a callous disregard for the victim's suffering when he shot him in the abdomen and in the head.

Answer; Mem. of P&A

*Luther v. Curry*
C 07-2565 JSW

9

Cal. Code Regs. tit. 15, § 2402(c)(D). Petitioner's motive for the murder was also trivial[2] in that he killed an innocent man simply because he had been caught in the act of stealing a stereo component, a minor crime.

The state courts also properly upheld the Board's decision because Petitioner's past criminal record showed that he failed to profit from society's previous attempts to correct his criminality; his heavy use of drugs, criminal history, and his dropping out of high school showed an unstable social history;[3] Petitioner had accumulated four serious misconduct reports and eight counseling memoranda while incarcerated; and although Petitioner had participated in the AA programs, he had not participated in any other self-help programs, nor attempted to educate himself through the prison library for several years prior to the May 2005; and Petitioner lacked insight into circumstances of the commitment offense because he testified he did not mean to shoot the victim, but he meant to shoot his gun, and he shot in the direction of the victim resulting in two fatal shots, each one of which could have independently killed the victim. (Ex. 2 at 17-49.)

Moreover, the Board has discretion to issue a multi-year denial of parole consideration under California Penal Code § 3041.5, and the Board's authority to do so is not limited to the initial parole consideration hearing as argued by Petitioner. *See Cal. Dept. of Corr. v. Morales*, 514 U.S. 499, 511 (1995) (Penal Code § 3041.5 affects the timing only of subsequent parole consideration hearings, and the Board retains the authority to tailor the frequency of subsequent suitability hearings); *see also* Cal. Penal Code § 3041.5(b)(2)(A).

Additionally, the collateral estoppel doctrine is not applicable to the Board's parole

---

2. Petitioner argues that the Board violated his right to due process because it did not compare his motive for the crime to others of the same offense. (Pet. at 26-30.) But there is no clearly established Supreme Court law mandating such comparison, and under California law, the Board need not compare Petitioner's offense to other similar murder offenses before fining him unsuitable for parole. *In re Dannenberg*, 34 Cal. 4th 1061, 1098 (2005).

3. Petitioner contends that the Board's finding of unstable social history has to necessarily only mean that he had a history of unstable or tumultuous relationship with others. Cal. Code Regs. tit. 15, § 2402(c)(3). But the list of unsuitability and suitability circumstances in the Board's regulations is not exhaustive, and only set forth as general guidelines. *Id.* at § 2402(c). Similarly, the Board may consider all his prior criminal offenses, whether or not they involved serious injury on another. *Id.* at § 2402(b) (the Board is to consider all relevant, reliable evidence).

Answer; Mem. of P&A

*Luther v. Curry*
C 07-2565 JSW

1 | suitability determinations to prevent the Board from considering all relevant suitability and
2 | unsuitability circumstances at each and every hearing. (*See* Pet. at 26-30, 60-63.) First, there is
3 | no clearly established United States Supreme Court law that the doctrine applies to parole
4 | proceedings on parole suitability/unsuitability factors. Second, the requirements of collateral
5 | estoppel are not met because a parole hearing is not a litigated case. *In re Cantrell*, 329 F.3d
6 | 1119, 1123 (9th Cir. 2003). Also, California Penal Code § 3041 mandates that at each parole
7 | hearing the Board consider the gravity and timing of the current convicted offense or offenses,
8 | and the Board regulations also mandate that at each hearing the Board consider all relevant,
9 | reliable evidence, including prisoner's social history, past and present mental state, past criminal
10 | history, the commitment offense, etc., and all other information which bears on the prisoner's
11 | suitability for release.[4/] Cal. Code Regs. tit. 15, § 2402(b). Thus, Petitioner's collateral estoppel
12 | argument lacks merit and should be dismissed.

13 | In summary, although Petitioner disagrees with how the evidence was weighed and
14 | evaluated by the Board and the state courts, (*see* Pet.) neither Petitioner, nor this Court, may re-
15 | weigh the evidence or assess the credibility of the evidence presented to the Board. *Hill*, 472
16 | U.S. at 455. Therefore, because the state court decisions are entitled to deference under §
17 | 2254(d), the petition should be denied. *Andrade*, 538 U.S. at 75.

## CONCLUSION

Petitioner's habeas corpus petition must be denied because the California courts' decisions upholding the Board's parole denial are not contrary to, nor an unreasonable application of, United States Supreme Court authority, and the decisions were not based on an unreasonable determination of the facts. Also, Petitioner received all due process he is entitled to: an opportunity to be heard and a written copy of the Board's decisions. And even if the Court applies the some-evidence standard, the Board's findings were supported by some evidence in

---

4. Petitioner's argument also makes no logical sense if followed through to its conclusion because Petitioner would also be collaterally estopped from putting forth evidence of his positive behavior if the Board had already considered evidence of such positive behavior at a prior hearing.

Answer; Mem. of P&A

*Luther v. Curry*
C 07-2565 JSW

1 | the record. Thus, the Court should deny the habeas petition.

2 | Dated: December 13, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

ANYA M. BINSACCA
Supervising Deputy Attorney General

*/s/ Elizabeth S. Kim*

ELIZABETH S. KIM
Deputy Attorney General
Attorneys for Respondent

40195296.wpd
SF2007200873

Answer; Mem. of P&A

*Luther v. Curry*
C 07-2565 JSW

12

# INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | Abstract of Judgment |
| 2 | May 23, 2005 Parole Hearing Transcript |
| 3 | February 2005 Life Prisoner Evaluation Report |
| 4 | Probation Officer's Report |
| 5 | List of Disciplinary History |
| 6 | November 2001 Mental Health Evaluation Report |
| 7 | December 2001 Life Prisoner Evaluation Report |
| 8 | November 1997 Life Prisoner Evaluation Report |
| 9 | Superior Court Order Denying Petition |
| 10 | Court of Appeal Order Denying Petition |
| 11 | California Court Order Denying Petition for Review |

# DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Kenneth Luther v. Ben Curry**

Case No.:    **C 07-2565 JSW**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>December 14, 2007</u>, I served the attached

**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Kenneth Luther
D-55450
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **December 14, 2007**, at San Francisco, California.

|  |  |
|---|---|
| M. Xiang | _[signature]_ |
| Declarant | Signature |