# EXHIBIT 4

IN THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ

DEPARTMENT __I__

THE PEOPLE OF THE STATE OF CALIFORNIA

vs.                                                  COURT CASE NO. __CR0355__

__KENNETH E. LUTHER__                                 SENTENCING DATE __4-24-87__
                Defendant

PROBATION OFFICER'S REPORT NO. __A24,952__

OFFENSE __Ct. I, 187, 2nd degree P.C. with 12022.5 P.C.; Ct. II, 496 P.C., felony and Ct. III, 664/484 P.C., misdemeanor__

VICTIM(S) __Joseph Vomvolakis__

CO-DEFENDANT(S) __None__

DATE OF OFFENSE __5-10-86/1:40 A.M.__

LOCATION OF OFFENSE __10111 Soquel Dr., Aptos.__

ARREST DATE/AGENCY __5-10-86/Santa Cruz Sheriff's Office/#86-4021__

CUSTODY CREDIT __350 days__

CUSTODY STATUS __Jail__

ATTORNEY __Ben Rice__

DEFENDANT'S ALIAS(ES) __Kenneth E. Luther, Jr.__

ADDRESS __2175 Cox Rd., Aptos    (Parents)__

SEX __M__    AGE __23__    DATE OF BIRTH __11-20-63__

PLACE OF BIRTH __Santa Cruz, CA__    CITIZENSHIP __U.S.__

PRIOR CONVICTIONS __0__    __3__    __11__    __0__
                    (Felony) (Misdemeanor) (Minor Traffic) (Juvenile)

CII NO. __A07553728__            FBI NO. __112300FA7__

RECOMMENDATION:                    PLEA AGREEMENT:

CALIFORNIA DEPARTMENT              NONE
OF CORRECTIONS


REPORT SUBMITTED BY:    KENNETH R. WARWICK
                        Deputy Probation Officer III


PRO-46 (Rev. 2/86)

KENNETH E. LUTHER                              SUPERIOR COURT NO. CR0355

PRESENT OFFENSE:

Count I involves the second degree murder of Joseph Nicolas Vomvolakis with the special allegation of the use of a firearm. Count II involves the defendant's possession of stolen property in the form of a .25 caliber Baretta automatic pistol. Finally, Count III is the defendant's attempted petty theft of a stereo component system from the vehicle owned by Stacy Hines.

The present matter was heard by jury trial, only a synopsis of the present offense will be provided in this report.

On May 10, 1986, at approximately 1:40 A.M., the Santa Cruz County Sheriff's Office received two calls, one anonymous and the other on the 911 emergency line. The former was the report of a "man down" in the street near 10111 Soquel Drive, Aptos. The latter was from Stacy Hines from her parent's residence on the 10200 block of Soquel Drive, involving her boyfriends having run in pursuit of a possible thief and her having heard gunshots shortly thereafter. Based on the above mentioned information, Sheriff's deputies, along with personnel from the Aptos Fire Department, were dispatched.

One of the dispatched Sheriff's deputies proceeded to the Hines residence. Upon arrival, the deputy met with Martin Hines, who stated that his sister had been the one to make the 911 call. Her boyfriend had been leaving the family home when he had apparently observed someone near one of the vehicles, had yelled at that individual, and had given chase. Shortly thereafter, Stacy Hines had heard what she believed to be three gunshots. She had then gone inside, asked her brother, Martin, to go outside and see what had happened while she called the Sheriff's Office. As the deputy was obtaining the above mentioned information, his radio dispatcher announced that another deputy had arrived at the reported scene of a man down and had, in fact, found a person at that location. At that point, the deputy broke off his conversation with Marin Hines and proceeded to the area indicated by the dispatcher, approximately 100 yards from the Hines residence. Simultaneously, Martin Hines followed on foot.

A Sheriff's deputy had responded to the reported location of a man down. Upon arriving, the deputy found a man lying on the roadway in front of 10111 Soquel Drive, Aptos. Upon closer inspection, he found no evidence of breathing or pulse, consequently, he began CPR activities. Shortly thereafter, Aptos Fire Department personnel arrived and took over first aid efforts. At the same time, Martin Hines arrived on foot and identified the victim as Joseph Vomvolakis. Aptos Fire personnel then transported the victim to Dominican Hospital.

KENNETH E. LUTHER                    SUPERIOR COURT NO. CR0355

PRESENT OFFENSE:    (Continued)

Resuscitation efforts were attempted at Dominican Hospital, however, the victim was declared dead on arrival. He had suffered two gunshot wounds, one to the abdomen and one to the head. The autopsy would later determine that the gunshot wounds had been from a .25 caliber automatic weapon. The wound to the stomach severed the iliac artery and would, of itself, have eventually caused death. The wound to the head, entering from behind the ear and ending on the right side of the head, would, of itself have caused death.

The responding deputies found three .25 caliber shell casings near the area of the body.

The crime scene was secured and deputies began canvassing the immediate area, attempting to find anyone who might have been a witness to the shooting. The old Arabian Motel was in immediate proximity to the crime scene, consequently, deputies began speaking to people then lodged at that location. In unit four, deputies contacted Charles Richard Perry and asked whether he had heard or seen anything in regards to the homicide. He answered in the negative, indicating that he had been asleep. Also inside of that living unit was an individual who identified himself as Kenneth Luther. Luther indicated that he had been asleep since returning to the apartment after having been involved in an evening of drinking. Deputies noted at that time that Perry had the strong odor of alcoholic beverage about his person.

During the above mentioned period of investigation, Sheriff's deputies had returned to the Hines residence where they had questioned Stacy Hines about what had transpired prior to the victim's taking off in pursuit of an unknown individual. During that same time, deputies had inspected the jeep owned by Stacy Hines. Apparently, she had determined that someone had attempted to remove part of the stereo components from the vehicle. During the inspection, deputies had found a beer can and knife clip, not belonging to Stacy Hines, inside the vehicle. Latent fingerprints were removed and compared with a sampling of prints available from those people questioned at the old Arabian Motel. A match was made between the prints on the beer can/knife clip and those on file for Kenneth Luther. Based on that information, an arrest warrant was requested for Kenneth Luther, as well as a search warrant for unit number four of the Arabian Motel and an alternate residence the defendant had given in Morgan Hill.

While deputies were in the process of searching the old Arabian Motel apartment, Kenneth Luther, Ronald Anderson and Charles Perry arrived. At that point, Luther was taken into custody on the above mentioned warrant for 187 Penal Code.

KENNETH E. LUTHER                    SUPERIOR COURT NO. CR0355

PRESENT OFFENSE:   (Continued)

Incidentally, during a search of the apartment, a quantity of marijuana was found, as well as various pieces of car stereo equipment, one of which had been reported stolen from a local residence. Additionally, while deputies were in the apartment, they received phone calls requesting marijuana purchases as well as several people arriving at the apartment, with the same request. On the basis of that information, Charles Perry was taken into custody for drug related matters.

The defendant was transported to the Santa Cruz County Sheriff's Office where, apparently after waiving his Miranda rights, a period of questioning ensued. Eventually, the defendant indicated that he had been drinking on the night preceding the offense and, for undisclosed reasons, had left the apartment that he was living in with Charles Perry and began walking. He indicated that he did not ordinarily steal stereos, but he had seen the jeep (Stacy Hines') and had been in the process of attempting to take out part of the stereo equipment when somebody had come out the door. At that point he had taken off running when the other individual said something to the effect, "hey, motherfucker, stop, I'm gonna kick your ass". The victim came up behind him, at which time the defendant stated that he had a gun and the victim responded by stating that the defendant should show it to him. As that occurred, the defendant says that he was tackled and knocked to the ground and during the struggle the gun simply went off. After the incident. he had run from the scene, tossing the gun and a screw driver into a nearby field (the items mentioned above were retrieved and it was determined that the weapon was a .25 caliber Baretta automatic pistol).

Deputies questioned the defendant about where he had obtained the weapon in question. After initial resistance, he admitted to having stolen the gun from Jorge Gomez in San Jose, a couple of weeks prior to the shooting. Subsequent investigation determined that Mr. Gomez had befriended the defendant, after the defendant had done some work at his home. He was not aware, prior to contact by law enforcement personnel, that the weapon had been stolen, as it had been given to him by his sister and he had placed it in a box of stereo components, on a shelf in his garage.

Court Data:

Offense:   Ct. I-187 P.C., felony with special allegation of 12022.5 P.C.; Ct. II-496 P.C., felony and Ct. III-664/487(1) P.C., felony.

Final Disposition:   3-2-87 the defendant pled guilty to Ct. II, 496 P.C.  3-13-87, defendant found guilty by jury trial of 187 P.C. in the second degree with the use allegation in Ct. I and 664/484 P.C., as a misdemeanor in Ct. III.

-4-

KENNETH E. LUTHER                SUPERIOR COURT NO. CR0355

Court Data:   (Continued

Plea Agreement:   None.

Sentencing Date:   April 24, 1987.

CRIMINAL RECORD:

The Court is respectfully referred to the attached criminal record section.

DEFENDANT'S STATEMENT:

The defendant was interviewed by this officer on one occasion at the Santa Cruz County Jail.  During that interview, he was advised of his privelege to submit a personal hand/typewritten statement in his own behalf.  However, as of the date of the dictation of this report, no written statement has been received from the defendant.  Orally, the defendant indicated that several days prior to the offense, he had come to Santa Cruz to work on Charles Perry's car.  Subsequent to that time, he had been involved deeply in drinking and drug usage (a blood sample taken from the defendant shortly after his arrest, determined that he had both cocaine and cannabanoids in his system).  On the night before the offense, an unnamed friend came by the apartment and suggested they steal a number of stereos.  While the defendant did not care to participate himself, he went along with his friend and three car stereos were stolen.  For some reason, the defendant became involved in the theft of a fourth stereo, one of which was found at the apartment later on.

On the evening preceding the offense, as had been his habit, the defendant had consumed a quantity of liquor and had been using cocaine, according to the defendant, up to one gram that evening.  Charles Perry and his girlfriend were in the apartment, in bed together, consequently, the defendant decided to leave.  He left, and walked around aimlessly, eventually ending up at the Hines residence and, for no particular reason, attempted to take a stereo component.  As that was transparent, the victim exited the residence and gave chase.

In regards to what transpired at the time of the shooting, the defendant was unable to provide a great deal of meaningful information.  He indicated that he had had the gun in his jacket, only because he did not feel that he had any other place to keep it at the apartment.  In fact, he claims that he did not realize he had it until he was running from the victim.  In regards to the shooting itself, he remembers nothing other than the gun went off during a struggle with the victim.  He denies that he was any distance from the defendant, despite forensic/medical information indicating that no struggle occurred between the defendant and the victim and that due

KENNETH E. LUTHER                           SUPERIOR COURT NO. CR0355

DEFENDANT'S STATEMENT:   (Continued)

to lack of powder residue around the gunshot wounds, it appears that the victim was shot from some distance.

In regards to the theft of the firearm, the defendant simply had no explanation, other than, while going through some of that victim's possessions in his garage, he had come across the weapon. Initially, he had not taken it, however, he had returned some time later and removed the weapon.

The defendant expresses a great deal of fear concerning his projected incarceration within the Department of Corrections. However, he does hope that he will be allowed to finish his education and learn a useful trade. Additionally, he has plans for marriage, prior to his commitment to the Department of Corrections. While they are rather nebulous, he indicates that, if allowed to, he will follow through with them. When asked why a marriage at this time is so important, the defendant rather pathetically stated, "so I'll have someone to come back to".

VICTIM'S STATEMENT:

The Vomvolakis family, the defendant's mother, father and older brother, were interviewed by this officer at the Santa Cruz County Probation Center on one occasion. During that interview, a number of topics were discussed at length. However, it was decided that they would provide a written statement, expressing their views. That statement will be attached to the end of this report for the Court's consideration.

RESTITUTION FINE (13967 of the Government Code):

A fine of $100 is recommended, to be stayed pursuant to Section 1202.4 Penal Code.

RESTITUTION FUND (1203.04 Penal Code):

None.

PERSONAL AND FAMILY HISTORY:

Kenneth E. Luther, Jr. was born on November 20, 1963 in Santa Cruz, California the third in a series of four children born to the union of Kenneth E. and Billie Luther. The defendant's father is a construction superintendent for E. F. Brady, while the defendant's mother is occupied as a housewife. Prior juvenile reports note the parents involvement in Alcoholic Anonymous as well as the defendant's involvement in Teen-Anon, thus suggesting alcohol problems within the family as early as 1981. The defendant's two older

KENNETH E. LUTHER                           SUPERIOR COURT NO. CR0355

PERSONAL AND FAMILY HISTORY:   (Continued)

sisters, Carrie Ackerman and Kelly Crisolo, are both married and living out of the family home. The defendant's younger sister, Tracy Luther, age 17, resides with her parents and is occupied as a student. While the defendant gives his parent's address as his own, that is essentially only a mailing address. Since approximately 18 years of age, he has been living on his own at various locations in both Santa Clara and Santa Cruz Counties. The nature of these periods of residence, as explained by the defendant, has been transitory, essentially the reaction to economic pressures. Apparently on more than one occasion the defendant has been reduced to living in his own car.

Health:

The defendant claims to be in good health at the present time. In 1984 he underwent an appendix operation, however, with no lasting problems, other than an outstanding medical bill. He has, in the past, cut the end off of his right little finger and dislocated his shoulder. The latter injury is of ongoing concern due to the development of what appears to be arthritis.

Substance Use:

The defendant initially advised this officer that his involvement with illegal narcotics and drugs was limited to marijuana and cocaine. When asked for more specificity, he indicated that he began the usage of marijuana at 16 or 17 years of age and, as evidenced by the present offense, has continued its usage to the present time. He began using cocaine at 19 years of age and by age 21 was using up to 3½ grams per day. About that same time, he began dealing in drugs, in order to finance his drug usage. As noted earlier, he claims that, on the night of the offense, that he had used one gram of cocaine. He reported to this officer that his only other usage of drugs has been limited to the experimentation with LSD on one occasion. In a 1983 probation report, the defendant admitted to the usage of marijuana, but to no other illegal narcotic or drug.

In regards to the use of alcohol, the defendant admits to its regular usage, often to excess, however, he could not quantify his usage in terms of number of drinks or containers of beer.

Education:

The defendant's educational history is apparently unremarkable to the point of his termination. The defendant reached the level of the 11th grade at Aptos High School, when he quit after having had problems over his possession of stolen school property. He has had no formal education since that time.

KENNETH E. LUTHER                    SUPERIOR COURT NO. CR0355

Employment:

The defendant's last period of employment was for a two month period from March through May of 1986, with Dave's Traxcavation Company in San Martin, as a laborer. That ended when he was laid off due to lack of work. Prior to that, he reports having worked intermittently from 1977 thorugh 1985 with, or through, his father at E. F. Brady Construction Company in Castroville. It should be noted that the defendant claims that his employment history has been intermittent, in that he was often laid off or unable to work due to school.

Financial Status:

The defendant reports that he earned approximately $12,000 in 1985. In 1986, he concludes that he only earned approximately $1,000. He reports outstanding debts both on the payment for a 1966 truck and to Dominican Hospital for his appendix operation, amounting to $3,500. He reports no assets at the present time.

Marital Status:

The defendant is not now married, nor does he report ever having been so. However, he names Annie Brower as his fiancee. Apparently he has known her for approximately one year, and, at the present time they have plans to marry before he is sent to the Department of Corrections. The defendant has never fathered any children.

Military Status:

The defendant entered the United States Army on February 1, 1984, and separated on February 29, 1984, due to, "did not meet procurement medical fitness standard/no disability". Under remarks in the discharge summary they indicated that he suffered from arthritis in his right shoulder.

COLLATERAL REPORTS:

The Court is respectfully referred to the attached psychological and psychiatric evaluations submitted by David Marlowe, Ph.D. and Taylor Fithian, M.D.

SENTENCING FACTORS:

Criteria Affecting Probation:

Count I-The defendant is statutorily ineligible for probation (Rule 414(a)).

Count II-The defendant planned the commission of the present offense as, by his own admission, after having found the weapon on one

-8-

KENNETH E. LUTHER                    SUPERIOR COURT NO. CR0355

Criteria Affecting Probation:    (Continued)

occasion, he returned some time later to take it (Rule 414(c)(5)). The defendant took advantage of a position of trust or confidence to commit the offense (Rule 414(c)(8)). The defendant's record of criminal conduct is of an increasing serious nature (Rule 414(d)(1)). The defendant was on probation when he committed the present offense (Rule 414(d)(2)). The defendant's willingness and ability to comply with the terms of probation is suspect at this time (Rule 414(d)(3)). The defendant may be in danger of addiction or abuse of alcohol or narcotics (Rule 414(d)(6)).

Circumstances in Aggravation:

The manner in which the crime was carried out indicates premeditation (Rule 421(a)(8)). The defendant took advantage of a position of trust and confidence to commit the offense (Rule 421(a)(12)). The defendant was on probation when he committed the crime (Rule 421(b)(4)).

Circumstances In Mitigation:

None.

Criteria Affecting Current or Consecutive Sentences:

Counts I and II sought different objectives and were independent of one another, suggesting consecutive sentences (Rule 425(a)(1)). The crimes were committed at different times and separate places, thus suggesting consecutive sentences (Rule 425(a)(3)).

EVALUATION:

Examination of the defendant's background, particularly his record of involvement with the authorities, does not suggest an offense of such grave proportions. However, that same examination does show the defendant to have been basically irresponsible for some time, one who has led an existence immersed in the drug culture with little thought for long-term goals, but concern for immediate gratification. The defendant's explanation for having a gun in his possession as being purely happenstance, has the ring of plausible deniability, but is more easily understood in the context of drug dealing within the residence in which he was living and his involvement in the theft of personal property from friends and those living in close proximity to him. Having taken that path, the responsibility for all that has followed, must be laid directly in the defendant's lap, despite his age and rather pathetic demeanor. Consequently, the prescribed commitment to the Department of Corrections for Count I is understandable. It is equally suggested in the case of Count II for the reasons outlined in the sentencing factors section.

KENNETH E. LUTHER                         SUPERIOR COURT NO. CR0355

EVALUATION:  (Continued)

Section 669 of the Penal Code, which deals with sentencing such as suggested here, indicates that the defendant shall serve any period controlled by the determinate sentencing law, first, then followed by the indeterminate period of sentencing. In the present matter, the two years California Department of Corrections sentence on Count II, 496 Penal Code, will be served before the defendant commences serving the indeterminate sentence and enhancement imposed on Count I.

KENNETH E. LUTHER                    SUPERIOR COURT NO. CR0355

RECOMMENDATION:

It is respectfully recommended in the matter of Kenneth E. Luther, Court number CR0355, that the defendant be committed to the California Department of Corrections. It is further recommended that the defendany pay a Restitution Fine of $100 pursuant to Section 13967 of the Government Code to the State Restitution Fund as directed by the Department of Corrections.

Suggested Prison Term:

| Offense | Indeterminate Sentencing | Enhancements | Total Term |
|---|---|---|---|
| 187 P.C. | 15 Years to Life | 2 Years | 17 Years |

| Offense | Aggravated | Mitigated | Base Term | Enhancements | Total Term |
|---|---|---|---|---|---|
| Ct. II, 496 P.,C. | No | No | 2 Years | None | 2 Years |
| Ct. III, 664/484 P.C. | 3 Months concurrent | | | | 19 Years |

TIME IN CUSTODY:

The defendant was taken into custody on May 10, 1986 and has remained in continuous custody since that date. Therefore, as of the present sentencing date of April 24, 1987, he will have accrued a total of 350 days credit.

Respectfully submitted,

LINDA E. ERWOOD
Chief Probation Officer

By: KENNETH R. WARWICK
Deputy Probation Officer III

Dated:  4-20-87
Dictated:    4-17-87
KRW/be
Approved for filing

Supervising Probation Officer

The foregoing report has been read and considered by the Court.

Dated: _____                    _____
                                          Judge of the Superior Court

PRO-85 (Rev. 10/84)

KENNETH E. LUTHER                       SUPERIOR COURT NO. CR0355

CRIMINAL RECORD:

Juvenile Record:

| Date | Referral | Disposition |
|---|---|---|
| 12-3-80 | Santa Cruz SO<br>484/496 P.C. | 1-26-81, Santa Cruz Co.<br>Prob. Dept., inf. superv. |

(The offense involved the defendant's theft and possession of a regulator, taken from the Aptos High School Auto Shop. According to the Intake Report, the defendant indicated that he did not know that the regulator was stolen, but did take responsibility for its possession.)

| 6-8-81 | Santa Cruz SO<br>23110 VC;<br>594 P.C. | 9-1-81, dism. after investigation. |
|---|---|---|

(The defendant admitted to having thrown water balloons at a school bus, along with other individuals. Apparently, the windshield to the school bus was broken, thus requiring the defendant to pay $50 as his share of restitution.)

Adult Record:

| Date | Agency | Offense | Disposition |
|---|---|---|---|
| 9-10-83 | CHP/SC | 11357c, 11359,<br>11360a H&S | 11-16-83, Santa Cruz Muni Ct. Case #40-83-06783, 11357c H&S, conv., 36 mos. summ. prob., 30 dys. jail. |

(The offense involved the defendant being stopped by the Highway Patrol and several pounds of marijuana and approximately $600 in cash were found in the trunk of the car. He denied possession or knowledge of either the marijuana or the money.)

| 7-31-85 | Santa Cruz SO | 415.1 P.C. | 9-10-85, Santa Cruz Muni Ct case #45-08093, charges 415(1) & 1320a P.C., $44 fine, 1 day jail, 1 day CTS, 6 mos good behavior. |
|---|---|---|---|
| 5-10-86 | Santa Cruz SO | 187 P.C. | Present offense. |

(The Court is respectfully referred to the attached DMV record sheet.)